**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ) <br> JOSHUA RAY FISHER ) <br> ) <br> Defendant. ) | Case No. 2:17-mj-271-GWF <br><br> Case No. 2:17-cv-1154-JAD-GWF |
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ) <br> JUSTIN ANTHONY FISHER ) <br> ) <br> Defendant. ) | Case No. 2:17-cr-00073-APG-GWF <br><br> **ORDER** <br><br> **Re: Motion to Eliminate Separation Order (ECF No. 7)** |

This matter is before the Court on Defendant Joshua Ray Fisher's Motion to Eliminate Separation Order and Allow Joshua Fisher to be Housed in the Same Area as His Brother (ECF No. 7), filed in Case No. 2:17-cv-1154-JAD-GWF on June 5, 2017. The Government filed its Response (ECF No. 9) on June 12, 2017. Defendant filed his Reply (ECF No. 11) on June 26, 2017. The Court conducted a hearing in this matter on June 30, 2017. Counsel for Defendant Justin Anthony Fisher also appeared at the hearing and joined in the motion filed on behalf of Defendant Joshua Ray Fisher. Defendant Joshua Ray Fisher filed a Supplement (ECF No. 14) to his motion on July 10, 2017.

**BACKGROUND**

Defendants Justin Anthony Fisher and Joshua Ray Fisher are twin brothers. Defendant Justin Anthony Fisher is charged in an indictment filed in Case No. 2:17-cr-00073-APG-GWF on February 28, 2017 with sexual exploitation of children in violation of 18 U.S.C. § 2251(a) and (e); distribution,

receipt and possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2) and (b), and 2252A(a)(5)(B); and coercion and enticement in violation of 18 U.S.C. § 2242(b). Defendant Justin Anthony Fisher was arraigned on the indictment on February 15, 2017, and ordered detained pending trial. *See Minutes of Proceedings* (ECF No. 4). He has been detained at the Nevada Southern Detention Center in Pahrump, Nevada ("Detention Center") since that date. His jury trial is currently set for August 21, 2017. *Order* (ECF No. 36).

Defendant Joshua Ray Fisher is charged in a criminal complaint filed in Case No. 2:17-mj-00271-GWF on April 4, 2017. *See Complaint* (ECF No. 1). He is charged with sexual exploitation of children in violation of 18 U.S.C. § 2251(a) and (e); and receipt and possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2) and (b), and 2252A(a)(5)(B). Defendant Joshua Ray Fisher appeared in court on the complaint on April 5, 2017 at which time a preliminary hearing was set. A detention hearing was conducted on April 7, 2017, and Magistrate Judge Leen ordered that Defendant Joshua Ray Fisher be detained pending trial. Judge Leen's detention order was later upheld by the district judge. *See* Case No. 2:17-cv-01154-JAD-GWF, *Minutes of Proceedings* (ECF No. 6), May 12, 2017. Defendant Joshua Ray Fisher is also detained at the Nevada Southern Detention Center in Pahrump, Nevada. His preliminary hearing is currently scheduled for August 17, 2017. *Order* (ECF No. 23).

On May 24, 2017, the Court granted Defendants Joshua Ray Fisher's and Justin Anthony Fisher's request to meet jointly with their counsel at the Detention Center. *See* Case No. 2:17-mj-271-GWF, *Order* (ECF No. 21). Defendants' counsel advised the Court at the June 30th hearing that they were able to meet jointly with their clients after the order was filed, although there was some delay in bringing one of the defendants to the meeting room.

It is undisputed that the Government requested the Detention Center to "house" the Defendants separately so that they may not have direct contact with each other, except when meeting jointly with their defense counsel. The Detention Center has complied with the Government's request. Although the Defendants are charged in separate cases, the Government considers them to be co-defendants and co-conspirators in the crimes charged. The Government alleges that both Defendants were interested in having sex with young girls. Prior to their respective arrests and detention, the Defendants allegedly

communicated with each other about sexually exploiting their respective child victims, and also shared child pornography images of their respective victims and other child victims. *Response* (ECF No. 9), pg. 3. The Government further states that after Defendant Joshua Ray Fisher was interviewed by the police and the FBI, and was aware that he was the target of an investigation involving child exploitation and child pornography, he continued to communicate with the 13 year old victim. After the victim and her mother were interviewed by law enforcement in March 2017, Defendant Joshua Ray Fisher allegedly communicated with the victim by encrypted message and told her not to cooperate with law enforcement. *Government's Response* (ECF No. 9), pgs 2-3; *Transcript of April 7, 2017 Detention Hearing,* Case No. 1:17-271-GWF (ECF No. 16), pg. 20. The Government is concerned that if the Defendants are housed in the same unit and are able to have unsupervised contact with each other, they will continue to conspire to commit criminal acts.

Following the June 30th hearing, the Court requested that the United States Marshal's Service provide information as to how the Defendants are being housed at the Detention Center. The Marshal's Service advises that the Defendants have agreed with each other to swap from a "PC dorm" and the segregation unit every few weeks. This means that when one Defendant is housed in the "PC dorm," the other Defendant is in the segregation unit, which essentially is solitary confinement. Because of the nature of the charges against them, the Defendants cannot be housed in one of the other general population dormitory units for safety reasons. During the June 30th hearing, the Government raised the possibility of transferring one of the Defendants to the Henderson, Nevada detention facility. If this was done, however, the transferred Defendant would be placed in the segregation unit in the Henderson, Nevada facility. Additionally, it would be substantially more difficult, if not impossible, for Defendants' counsel to conduct joint meetings with them.

## **DISCUSSION**

Defendants make two arguments in support of their motion. First, the Defendants argue that they need to communicate directly with each other, and not just when their attorneys are present, in order to adequately prepare their defenses. Thus, they assert that the "separation order" violates their Sixth Amendment rights. Second, because the separation order results in one of the Defendants being in administrative segregation at any given time, they impliedly argue that the order is punitive and

3

violates their rights to due process of law.

The Court has entered an order which authorizes Defendants and their counsel to have joint meetings at the Detention Center. There may be some greater efficiency or convenience if the Defendants are able to communicate directly with each other on a regular basis. The Defendants have not shown, however, that the separation order unreasonably impairs their ability to prepare their defenses–given that they can communicate with their respective attorneys, the attorneys can communicate and share information with each other, and, when necessary, can conduct joint meetings with the Defendants.

The second issue is whether the separation order is punitive and violates the Defendants' due process rights by requiring that one of them be in administrative segregation at any given time. "In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, . . . the proper inquiry is whether those conditions amount to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535-36, 99 S.Ct. 1861, 1872 (1979). The court must determine whether the restriction is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. *Id.* 441 U.S. at 538, 99 S.Ct. at 1873. Absent a showing of an expressed intent to punish on the part of government officials, the determination of whether the restriction is punitive "generally will turn on whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." *Id.* 441 U.S. at 538, 99 S.Ct. at 1873-74. The Court further stated:

> Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees. . . . Courts must be mindful that these inquiries spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility.

*Id.* 441 U.S. at 539, 99 S.Ct. at 1874.

The facts of this case are similar to those in *Valdez v. Rosenbaum*, 302 F.3d 1039 (9th Cir.

4

2002). In *Valdez*, the plaintiff brought a civil rights action against the federal prosecutor and state jail officials alleging that his constitutional rights were violated during his pre-trial detention as a result of restrictions placed on his telephone access. The plaintiff had been prosecuted for federal drug trafficking offenses and was detained in a state jail pursuant to an agreement between the federal government and the state. The plaintiff was initially placed in the general population where he had access to the telephones. The federal prosecutor notified the jail authorities that a superceding indictment was being filed to add five new defendants, none of whom were in custody. The prosecutor requested that plaintiff's telephone privileges be suspended until the newly added defendants were apprehended based on the concern that plaintiff would contact and warn them about the charges. In compliance with this request, plaintiff was placed in administrative segregation where he was not permitted to make or receive telephone calls, except for a daily phone call with his attorney. The administrative segregation lasted approximately four-and-a-half months. *Id.* at 1042-43.

In deciding whether plaintiff's due process rights were violated, the court first looked to the governmental interest involved and held that the government had a legitimate interest in ensuring the safety of police officers when executing arrests and in preventing a detainee from helping his co-conspirators elude arrest. *Id.* at 1046. Next the court considered whether the restriction was reasonably related to the governmental interest or constituted an exaggerated response. The court stated:

> A reasonable relationship between the governmental interest and the challenged restriction does not require an "exact fit," *Mauro v. Arpaio*, 188 F.3d 1054, 1060 (9th Cir. 1999) (en banc), nor does it require showing a "least restrictive alternative." *Thornburgh v. Abbott*, 490 U.S. 401, 410-12, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). Otherwise, "'every administrative judgment would be subject to the possibility that some court somewhere would conclude that it had a less restrictive way of solving the problem at hand.'" *Thornburgh*, 490 U.S. at 410-11, 109 S.Ct. 19874 (quoting *Turner*, 482 U.S. at 89, 107 S.Ct. 2254). "Moreover, it does not matter whether we agree with the defendants or whether the policy in fact advances the jail's legitimate interests. The only question that we must answer is whether the defendants' judgment was 'rational,' that is, whether the defendants might reasonably have thought that the policy would advance its interests. *Mauro*, 188 F.3d at 1060 (citation omitted).

*Valdez*, 302 F.3d at 1046.

The court found that the defendants met this standard. It was also persuaded that the defendants acted without punitive intent because the restriction was only in place for a short time and only for as

5

long as it served its stated purpose. *Id.*

In this case, the Government has a legitimate concern that if housed in the same dormitory or unit, Defendants will be able to conspire and work together to commit criminal acts or interfere with victims and witnesses. Defendants argue that these concerns have been eliminated by Defendants' incarceration and the Detention Center's control over their contact with the outside world. Although Defendants' ability to engage in criminal activity is obviously much more constrained than it would be if they were at liberty in the community, pretrial detention is not a barrier to contact with the outside world and does not, in and of itself, prevent a detainee, with the aid of others, from engaging in criminal activity. Particularly with respect to Defendant Joshua Ray Fisher, the Government has shown that he poses a substantial risk of continuing to engage in criminal activity.

The restriction imposed, keeping Defendants separated from each other, appears reasonably related to the legitimate governmental interest. It is a consequence of the separation order that one of the Defendants must be in administrative segregation. Administrative segregation, however, does not appear to be a goal, in itself, of the Government or the Detention officials. The adverse effects of administrative segregation are somewhat ameliorated by the Defendants being rotated between the "PC dorm" and administrative segregation. There may be less restrictive measures that the Government or Detention Center officials could take to minimize the risk that Defendants will conspire together to engage in criminal activity. It is not the Court's role, however, to determine whether there are less restrictive methods for accomplishing the Government's legitimate objectives. The Court finds that the separation order is not punitive at this time, and therefore does not violate Defendants' due process rights at this time.

The separation order, however, should be revisited at a reasonable time in the future. The adverse effects of administrative segregation, even if intermittent, increases as it is prolonged. Also, the need for the separation order may lessen as time passes. Accordingly, the Court will review the continued need for the separation order within 60 days unless the case is resolved or the segregation order is removed prior thereto. Accordingly,

**IT IS HEREBY ORDERED** that Motion to Eliminate Separation Order and Allow Joshua Fisher to be Housed in the Same Area as His Brother (ECF No. 7) is **denied**, without prejudice to

reviewing its continued need in the future.

**IT IS FURTHER ORDERED** that this matter is set for a status hearing on September 7, 2017 at 9:30 A.M. in Courtroom 3A unless the cases are resolved or the separation order is dissolved prior to that date.

DATED this 12th day of July, 2017.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge